**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TIMOTHY VANDENBOOM** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-577** |
| **TERRAL RIVERSERVICE, INC** | **SECTION "B" (4)** |

# ORDER AND REASONS

Before the Court are plaintiff Timothy Vandenboom's ("Vandenboom") Motions for Partial Summary Judgment on the Issue of Maintenance and Cure (Rec. Doc. 22) and Vicarious Liability (Rec. Doc. 23), defendant Terral Riverservice, Inc.'s ("Terral") Opposition to the Motion for Partial Summary Judgment on the Issue of Maintenance and Cure (Rec. Doc. 31), and Opposition and Cross Motion on the Issue of Vicarious Liability (Rec. Doc. 32), and Vandenboom's Opposition to the Cross Motion (Rec. Doc. 38);

Also before the Court are Vandenboom's Motion to Strike (Rec. Doc. 33), Terral's Motion for Leave to File Cross Motion and Opposition to the Motion to Strike (Rec. Doc. 34), and Vandenboom's Opposition to the Motion for Leave to File (Rec. Doc. 46);

Also before the Court are Terral's Objection to Motion to Review Magistrate Judge Order Denying Request to Amend or Withdraw Admission (Rec. Doc. 48), Vandenboom's Opposition (Rec. Doc. 49), and Terral's Reply in Support (Rec. Doc. 50);

Finally, before the Court is Terral's Motion to Continue Trial and Pretrial Deadlines (Rec. Doc. 51), Motion to Expedite Consideration of Motion to Continue Trial and Pretrial Deadlines (Rec. Doc. 52), and Vandenboom's Opposition to the Motion to Expedite Consideration (Rec. Doc. 53).

For the following reasons,

**IT IS ORDERED** that Terral's Objection to and Motion to Review the Magistrate Judge's Order Denying Terral's Request to Amend or Withdraw its Admission is **DENIED**, and the Magistrate Judge's Order (Rec. Doc. 47) is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Vandenboom's Motions for partial summary judgment on the issue of maintenance and cure and vicarious liability be **GRANTED**, and Terral's Cross Motion on the issue of vicarious liability be **DENIED**.

**IT IS FURTHER ORDERED** that Vandenboom's Motion to Strike be **DENIED** and that Terral's Motion for Leave to File Its Opposition and Cross Motion be **GRANTED**.

**IT IS FURTHER ORDERED** that Terral's Motion to Continue Trial and Pretrial Deadlines and Motion to Expedite (Rec. Docs. 51, 52) are **Dismissed without prejudice**. **No later than August 25, 2026** parties shall jointly submit in writing whether any issues remain for adjudication and if there still remains need for rescheduling pretrial and/or trial deadlines.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In this case, plaintiff Timothy Vandenboom ("Vandenboom") seeks to recover damages under the Jones Act and general maritime law from his former employer, defendant Terral Riverservice, Inc. ("Terral"), for injuries he sustained in an automobile accident caused by his coworker's negligent driving of a Terral-owned vehicle. Rec. Doc. 1.

On May 24, 2022, Vandenboom worked aboard Terral's ship, *MV MARY E. GATTLE*, alongside fellow crewmember, Ethan Redd ("Redd"). Terral crewmembers, following the end of their shifts, were required to complete "crew change," *i.e.*, to drive a company truck from the vessel to the Terral facility in Lettsworth, Louisiana, so that incoming crewmembers could use the truck for their shifts. Rec. Docs. 22-4 at 2–3; 22-6 at 2; 22-8 at 2. After working a double shift in which he worked twelve hours (6:00 a.m. to 6:00 p.m.), Vandenboom, with Redd accompanying him, departed the vessel which was located near Grand Rivers, Kentucky, and began the trip to the

Terral facility in Lettsworth, a trip estimated to take nine to ten hours to complete and would require driving overnight. Rec. Docs. 22-4 at 2–3; 32-5 at 2.

Roughly an hour into the trip, Redd, who began the trip as the driver, was pulled over by a police officer in Kentucky for speeding. Rec. Doc. 32-5 at 2. Redd revealed to the officer that his license was suspended. *Id*. Redd then called the Terral Port Captain, Lafayette Ainsworth, and informed him that he had been pulled over for speeding and possessed a suspended license. *Id*. at 3. Ainsworth responded by ordering Redd to "[g]et Tim to drive." *Id*. at 4. Tim, *i.e*., Vandenboom, obliged. *Id*. at 7. Vandenboom drove for about six hours before informing Redd that he needed to rest because he was tired. *Id*. Though his license was suspended and he had been pulled over for speeding, Redd relieved Vandenboom of his driving duties. *Id*. at 7–8. As Redd drove, Vandenboom fell asleep in the passenger seat. Rec. Doc. 22-2 at 4.

During his second stint as the designated driver, Redd sped off the highway and "clipped" a road sign while driving 95 miles per hour. Rec. Doc. 28-1 at 3. Redd eventually course-corrected and returned to the highway. While driving southbound on Interstate 55 in Mississippi, Redd noticed that it began to rain heavily and strong winds battered about. Rec. Doc. 32-5 at 14. Despite the rainfall, Redd set the truck's cruise control to 80 miles per hour and pressed ahead. *Id*. Around 1:00 a.m., still in Mississippi, Redd lost control of the vehicle, veered off the highway, and crashed into a ditch. The crash caused Vandenboom to break his femur, a foot and ankle, suffer back and neck injuries, and sustain a traumatic brain injury. Rec. Doc. 1 at 3.

Terral supervisors became aware of the accident the following morning. Ainsworth, who had learned the prior day that Redd had been speeding and driving with a suspended license, learned that Redd was driving at the time of the accident. Rec. Doc. 22-8 at 8. Allen Hartshorn, another Terral supervisor, learned the same day, from either Ainsworth or another supervisory

official, that Redd was driving at the time of the accident. Rec. Doc. 22-13 at 8–10. Hartshorn also reviewed footage from the truck's dashboard camera that showed that, roughly 25 minutes before the accident, the vehicle sped off the highway at approximately 95 miles per hour and clipped a highway sign. *Id*. at 13–15. Hartshorn reported his findings to Ainsworth and other supervisory officials. *Id*. at 10. On July 11, 2022, Ainsworth terminated Redd for driving with a suspended license in violation of company policy. Rec. Doc. 22-8 at 10.

Vandenboom sued Terral on March 25, 2025, asserting against Terral claims for maintenance and cure, unseaworthiness, and Jones act damages. Rec. Doc. 1. In July 2025, Vandenboom provided Terral with medical records with his Rule 26 initial disclosures which showed that Vandenboom had consumed alcohol prior to the accident. On September 11, 2025, Vandenboom served upon Terral its Requests for Admissions, which requested that Terral admit that both Vandenboom and Redd "were in the course and scope of their employment at the time of the accident." Rec. Doc. 37-1 at 17. On October 9, 2025, Terral admitted that they were. Rec. Doc. 37-2 at 4. However, Terral later appeared to reverse course, stating in its December 18, 2025 Amended Answer that Vandenboom "proceeded to act in a manner that was beyond the scope of his employment with Terral River" and that he "ceased to act as an employee of Terral River" when he allowed Redd to drive after being instructed to complete the drive himself. Rec. Doc. 18 at 6. Nearly three months later, on March 10, 2026, Terral filed a Motion to Withdraw its prior admission that Redd and Vandenboom were acting within the "course and scope of their employment." Rec. Doc. 28. Magistrate Judge Roby denied the motion, finding that Terral needlessly delayed filing its motion to withdraw when it had access to facts supporting a withdrawal request months prior and that a withdrawal at this stage of the proceedings would be prejudicial. Rec. Doc. 47.

Meanwhile, Vandenboom has filed several partial summary judgment motions, arguing that Terral owes it maintenance and cure and is vicariously liable for the injuries he sustained during the accident. Rec. Docs. 22, 23. Notably, Vandenboom relies in part on Terral's admission that he and Redd were acting within the course and scope of their employment. *Id*. Terral has opposed Vandenboom's motion and has cross-moved for summary judgment, arguing that Redd was not acting within the course and scope of his employment. Rec. Docs. 31, 32. Terral has also appealed Magistrate Judge Roby's denial of its motion to withdraw. Rec. Doc. 48. Vandenboom seeks to strike Terral's opposition and cross-motion because they are untimely, which Terral opposes. Rec. Docs. 33, 34.

## II. LAW AND ANALYSIS

### A. Appeal of Magistrate Judge Decision

The Court begins with Terral's appeal of the Magistrate Judge's Order denying its Motion to Withdraw, recognizing that Terral's admission concerning "course and scope of employment" is critical to pending motions for summary judgment. A district court "will modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). A district court reviews a magistrate judge's "factual findings under a clearly erroneous standard, while legal conclusions are reviewed *de novo*." *Moore v. Ford Motor Co*., 755 F.3d 802, 806 (5th Cir. 2014). A factual finding is "clearly erroneous" when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395 (1948).

Having reviewed the record, the Magistrate Judge's Order, and Terral's objections thereto, the Court will affirm the Magistrate Judge's Order denying Terral's Motion to Withdraw. Terral sought to withdraw its admission because it "discovered additional facts and evidence which

contradicted its prior admission" and that at the time of its admission, "it was in possession of limited factual information concerning the accident[.]" Rec. Doc. 48-1 at 2, 4. However, at the time of its admission, Terral had access to the factual information which it claims would have led it to deny the request for admission that Redd and Vandenboom acted within the course and scope of their employment.

On September 11, 2025, Vandenboom served upon Terral its Requests for Admissions. Rec. Doc. 37-1 at 17. Terral answered the request for admission in October 2025, admitting that Redd and Vandenboom acted within the course and scope of their employment. Since May 2022, however, Terral supervisors have known that (1) an hour into the trip to the Terral facility, Redd was stopped by police for speeding; (2) Redd was driving with a suspended license; (3) Redd was speeding roughly 25 minutes before the accident; and (4) Redd was driving at the time of the accident in violation of a direct order from Ainsworth that Vandenboom continue the drive. In July 2022, and therefore *years* before Terral answered Vandenboom's request for admission, Ainsworth terminated Redd for driving with a suspended license in violation of company policy. Rec. Doc. 22-8 at 10. It is not clear why Terral's *counsel* did not become aware of these facts until after the admission, but it is undeniable that Terral itself knew the relevant factual details that would have supported denying or objecting to the request for admission.

Contrary to Terral's assertion, the Court does not charge parties to possess "automatic knowledge of all the facts at the beginning of discovery[.]" Such a requirement would make discovery unnecessary. Rec. Doc. 50 at 8. However, Terral had a *month* before it needed to respond to Vandenboom's request for admissions and, coupled with the fact that Terral possessed most information since May 2022, it is not clear why Terral could not have provided an accurate response to Vandenboom's request for admission.

While Terral also notes that evidence "strongly suggest Vandenboom and Redd consumed alcoholic beverage(s) before this accident," Rec. Doc. 48-1 at 5, Terral does not dispute Vandenboom's response that he provided Terral with medical records on July 22, 2025, which establishes that Vandenboom had consumed alcohol prior to the accident. Rec. Doc. 49 at 12; *see also* Rec. Doc. 50 at 9 (stating that Terral had "no reason …to…believe[] that both Vandenboom, and Ethan Red [*sic*] had been drinking before or at the time of the accident[.]"). While Terral may have discovered additional facts pertaining to alcohol consumption after its admission, and particularly concerning *Redd's* consumption of alcohol, Terral appears to have had access to relevant information concerning alcohol consumption before its admission which it could have relied on in denying or objecting to the request for admission.

Terral argues that it is "entitled to withdraw and amend responses" under FRCP 36 assuming there is no prejudice to the opposing party and withdrawal would facilitate discovery and trial on the merits. Rec. Doc. 48-1 at 1. However, as the Magistrate Judge correctly stated, even if a movant satisfies the two-part test for withdrawing or amending an admission under FRCP Rule 36(b), a "district court still has discretion to deny a request for leave to withdraw or amend an admission." Rec. Doc. 47 at 5; *see also Covarrubias v. Five Unknown INS/Border Patrol Agents*, 192 F. App'x 247, 248 (5th Cir. 2006) (stating same). The Magistrate Judge found that Terral "waited approximately five months before seeking withdrawal of its October 9, 2025 admission" which occurred *after* Vandenboom had submitted a motion for summary judgment relying in part on the admission. Rec. Doc. 47 at 8. Courts have found this lack of diligence to adequately support a court's discretion to deny a motion to withdraw or amend. *See, e.g., Onosode v. Equifax Info. Servs*., LLC. No. 420CV00951SDJCAN, 2022 WL 19380561, at *7 (E.D. Tex. July 21, 2022) (collecting cases in which courts have denied a motion to withdraw or amend an

admission when the moving party failed to diligently seek to withdraw the admission). Given this lack of diligence, and the record showing that Terral had ample evidence prior to its admission to object to or deny the request for admission, the record does not show that the Magistrate Judge's Order was clearly erroneous or contrary to law. For the reasons explained herein and those provided in the Magistrate Judge's Order, the Court **DENIES** Terral's Appeal of the Magistrate Judge's Order (Rec. Doc. 47).

**B. The Timeliness of Terral's Opposition Memoranda**

Vandenboom has moved for summary judgment on the issues of vicarious liability and maintenance and cure, arguing that Terral is liable to him for his injuries due to Redd's negligence. Rec. Docs. 22, 23. Terral opposes both motions. Rec. Docs. 31, 32-1. Terral's opposition to Vandenboom's motion for summary judgment on the issue of vicarious liability also serves as a cross motion for summary judgment on the same issue. Rec. Doc. 32-1. However, before addressing the merits of Vandenboom's motions, the Court must determine if Terral's opposition to those motions is properly before the Court.

Vandenboom filed his motions on February 6, 2026, and the motions were "noticed" for March 4, 2026. Rec. Docs. 22, 23. Local Rule 7.2 states that "[t]he noticed date is the date the motion is deemed submitted to the court for decision and after which no further briefing will be allowed, except with prior leave of court." Pursuant to Local Rule 7.5, the deadline for Terral to file oppositions to Vandenboom's motions was eight (8) days before March 4, 2026, which was February 24, 2026. However, Terral waited until March 10–11, 2026, and therefore two weeks after the deadline, to file its dual cross motion and opposition to Vandenboom's motion for summary judgment on the issue of vicarious liability (Rec. Doc. 32) and opposition to Vandenboom's motion for summary judgment on the issue of maintenance and cure (Rec. Docs.

30, 31). Vandenboom now moves to strike Terral's oppositions. Rec. Doc. 33. In response, Terral, nearly a month after its original deadline and two weeks after Vandenboom filed his motion to strike, requests leave to file its opposition. Rec. Doc. 34.

Under Federal Rule of Civil Procedure 6(b)(1), district courts have the "discretion to allow untimely responses where the party failed to act because of excusable neglect." *Rosco v. Potter*, 265 Fed.App'x 279, 283 (5th Cir. 2008). Several factors are relevant to a court's excusable neglect analysis, including "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006). The burden of establishing excusable neglect is on the party seeking an extension of time to file their response. *Traffic Scan Network, Inc. v. Winston*, No. 92-2243, 1995 WL 83932, at *1 (E.D. La. Feb. 24, 1995).

While mistakes of counsel generally militate against a finding of excusable neglect, a district court may still grant the offending party a chance to file their untimely response. That is because "the reason for the delay and whether it was within the control of the movant" is "but one of the several factors that the Court must evaluate in determining excusable neglect." *Theriot v. Bldg. Trades United Pension Trd. Fund*, No. CV 18-10250, 2022 WL 2191688, at *2 (E.D. La. June 17, 2022). Notably, "other considerations may outweigh this negative factor and tip the balance in favor of allowing additional time." *Id* (citing *Midwest Emps. Cas. Co. v. Williams*, 161 F.3d 877, 881–82 (5th Cir. 1998)). The Fifth Circuit has held that the excusable neglect inquiry "contains leeway for parties who make good faith mistakes" and encompasses "omissions caused by carelessness." *Coleman Hammons Constr. Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 942 F.3d 279, 283 (5th Cir. 2019).

Here, Terral explains that its oppositions to Vandenboom's motions are untimely because of *pro hac vice* counsel's "inadvertent erroneous reading of Local Rule 7.5[.]" Rec. Doc. 34-1 at 3. Local Rule 7.5 states that "[e]ach party opposing a motion must file and serve a memorandum in opposition to the motion with citations of authorities no later than eight days before the noticed submission date." It is unclear how *pro hac vice* counsel could have misread this clearly stated rule. Regardless, an erroneous reading of local rules constitutes "ignorance, carelessness, or negligence," which is arguably not sufficient to satisfy the "excusable neglect" standard. *Traffic Scan Network*, 1995 WL 83932, at *1; *see also Martin v. Akzo Nobel Polymer Chemicals* LLC, 180 F. App'x 519, 521 (5th Cir. 2006) (stating that "ignorance of local rules or misconstruction of their applicability does not constitute excusable neglect under Rule 60(b)(1)."); *and Homelife in the Gardens, LLC v. Landry*, No. CV 16-15549, 2018 WL 310377, at *2 (E.D. La. Jan. 5, 2018) ("The same 'excusable neglect' standard applies under both 60(b)(1) and Rule 6(b)(1).").

However, the Court will allow Terral to file its untimely responses. While Terral has been careless, the Fifth Circuit has explained that "the ordinary meaning of neglect 'encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness.'" *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th 521, 525 (5th Cir. 2021). As such, Terral's carelessness here is not reason enough for the Court to deny its request to file its opposition. The record also does not suggest that Terral has acted in bad faith. *See Pennino v. Reilly-Benton Co., Inc.*, No. CV 21-363, 2022 WL 2467685, at *2 (E.D. La. July 6, 2022) (Lemelle, J.) (granting an opportunity to file untimely response because of lack of evidence of bad faith). Finally, while Vandenboom argues that he would be prejudiced if Terral's request were granted because he would not be able to file a reply given the expired submission date on his summary judgment motions, the deadline for dispositive motions is not until September 2, 2026, and the pre-conference and trial dates are

not until October 15, 2026, and October 26, 2026, respectively. *See Pennino*, 2022 WL 2467685, at *2 (finding that non-movant did not suffer significant prejudice in part because the dispositive motion, pretrial, and trial deadlines were months away). If necessary, Vandenboom may file a motion for leave to file a reply to Terral's oppositions and cross motion.

For the reasons provided herein, Vandenboom's Motion to Strike (Rec. Doc. 33) is **DENIED** and Terral's Motion for Leave to File Opposition Memoranda and Cross Motion (Rec. Doc. 34) is **GRANTED**.

### C. The Motions for Summary Judgment

Having decided that Terral may file its opposition memoranda and cross motion, the Court will now address the merits of Vandenboom's motions for summary judgment. The Court will begin with the cross motions for summary judgment on the issue of vicarious liability (Rec. Docs. 23, 32) before addressing Vandenboom's motion on the issue of maintenance and cure (Rec. Doc. 22).

Summary judgment is appropriate when the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Material in support or opposition of a motion for summary judgment may be considered if it is "capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original) (quoting Fed. R. Civ. P. 56(c)(2)). Courts view all facts and evidence in the light most favorable to the non-moving party, but "refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Where the movant bears the burden of proof, it must "demonstrate the absence of a genuine issue of material fact" using competent summary judgment evidence. *Celotex*, 477 U.S. at 323. However, "where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). Should the movant meet its burden, the burden shifts to the non-movant, who must show by "competent summary judgment evidence" that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Lindsey*, 16 F.3d at 618. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Bargher v. White*, 928 F.3d 439, 444–45 (5th Cir. 2019). An opposing party "may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial." *Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014). There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

Summary judgment is the proper vehicle for resolving FOIA claims. *See Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002) ("Summary judgment resolves most FOIA cases."). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).

*i. Vicarious Liability*

The parties dispute whether Terral is vicariously liable for Redd's negligence. They agree that resolution of this dispute turns on whether Vandenboom and Redd were in the "course and scope of their employment" at the time of Redd's negligence, and further cite *Beech v. Hercules Drilling Co., LLC*, 691 F.3d 566, 571 (5th Cir. 2012) for authoritative principles. *Beech* explains that under the Jones Act, "an employer may be vicariously liable for its employee's negligence under the doctrine of respondeat superior so long as the negligence occurred 'in the course of employment.'" *Beech*, 691 F.3d at 571. More specifically, "in order to hold an employer vicariously liable under the Jones Act for one employee's injury caused by the negligence of a co-employee, a plaintiff must show that the injured employee and the employee who caused the harm were both acting in the course of their employment at the time of the accident." *Beech*, 691 F.3d at 572. Given the parties' citation of *Beech*, and their disagreement about whether it is analogous to the facts of the instant matter, the Court now turns to that case.[1]

In *Beech*, plaintiff Beech worked as a crane operator aboard a drilling rig owned by his employer. *Beech*, 691 F. 3d at 568. One day, plaintiff's coworker, Cosenza, accidentally brought a firearm aboard the vessel and, upon discovering his mistake, hid the weapon in his locker and failed to report that a weapon was aboard the vessel—all in violation of workplace policies. *Id*. Cosenza was assigned to a night shift in which his duties were "to monitor the rig's generator, to check certain equipment, and to report any suspicious activity or problems." *Id*. The employer had encouraged Cosenza to stay in the break room and watch television because he could perform his

[1] Terral has admitted that Vandenboom and Redd acted within the course and scope of their employment, and the Magistrate Judge has denied Terral's request to withdraw or amend its admission. Rec. Doc. 47. The Court has affirmed that ruling and denied Terral's appeal of the Magistrate Judge's Order. As such, that admission is binding pursuant to Federal Rule of Civil Procedure 36(b). Nevertheless, the Court will still address the issue out of an abundance of caution.

duties while engaging in those activities. *Id*. Beech, who was aboard the vessel that same night, mentioned to Cosenza that he was "thinking about purchasing a small firearm," and Cosenza, believing that Beech may be interested in his firearm, left the break room and retrieved the firearm from his locker. *Id*. Cosenza showed the firearm to Beech who inspected, but did not handle, the weapon. And then, with the firearm still in his possession, "[a]s Cosenza sat back down in the TV room, his arm bumped a part of the couch, and the firearm accidentally discharged, mortally wounding Beech." *Id*. at 568–69.

The Fifth Circuit was confronted with the question of whether the employer was vicariously liable for Cosenza's negligence, and therefore needed to determine whether, at the moment the weapon fired, Cosenza was acting within the "course and scope of his employment." *Beech*, 691 F. 3d at 572. After considering several alternative tests, the Fifth Circuit held that "the test for whether a Jones Act employee was acting within the course and scope of his employment is whether his actions at the time of the injury were in furtherance of his employer's business interests." *Id*. at 574. The Fifth Circuit cited favorably a Seventh Circuit decision, *Sobieski v. Ispat Island, Inc*., 413 F.3d 628 (7th Cir. 2005), in which that court found that an employer was not vicariously liable for a crewmember's action of massaging another crewmember's neck (and thus injuring him) because the crewmember engaged in an action that was "undertaken by an employee for a private purpose and having no causal relationship with his employment." 413 F.3d at 634–35. In a footnote, the *Beech* court also cited favorably other cases in which courts found that an employee was not acting within the course and scope of their employment when they engaged in private activities or pursued their own interests. *Beech*, 691 F.3d at 574, n.3. The Fifth Circuit ultimately concluded that "Cosenza's leaving the break room to retrieve a loaded firearm when he

was supposed to be monitoring the generator and watching out for suspicious behavior took him outside the course and scope of his employment." *Id*. at 576.

Having reviewed *Beech*, this Court holds, contrary to Terral's arguments, that it is not controlling or applicable to the facts in the instant matter. Unlike the negligent parties in *Beech* (showing off a firearm to an interested party) or *Sobieski* (providing unauthorized neck massages), who were engaged in purely private activities that had no causal relationship with their employer's business, Redd's actions, though negligent, was in pursuit of a core part of his job duties: crew change. In *Beech*, Cosenza took himself outside of the course and scope of his employment when he "[left] the break room to retrieve a loaded firearm when he was supposed to be monitoring the generator and watching out for suspicious behavior[.]" *Beech*, 691 F.3d at 576. It was Cosenza's pursuit of a private activity, and consequent *abandonment* of his job duties, which led the Fifth Circuit to conclude that Cosenza was not acting within the course and scope of his employment. Here, however, Redd never abandoned his job duties nor has Terral introduced any evidence establishing as such.[2]

[2] Terral has argued, in later briefing, that Vandenboom and Redd consumed alcohol prior to the accident. Rec. Doc. 48-1 at 5. Terral has also stated its intention to use later deposition transcripts and testimony "to prove that Ethan Redd was intoxicated at the time of the subject accident." Rec. Doc. 50 at 9–10. However, in its opposition memorandum to Vandenboom's motion for summary judgment on the issue of vicarious liability, Terral does not cite any evidence concerning alcohol consumption, and the word "alcohol" does not even appear in the memorandum. *See* Rec. Doc. 32-1. This absence is especially curious given that in its memorandum supporting its motion to withdraw admission (Rec. Doc. 28-1), filed a day before its cross motion and opposition (Rec. Doc. 32-1), Terral stated that its counsel learned that Redd, and possibly Vandenboom, had consumed alcohol prior to the accident.

While possible that Terral did not fully develop its alcohol consumption theory until after it submitted its opposition and cross-motion, later briefing also does not cite to *evidence* concerning whether Redd consumed alcohol prior to the accident, was intoxicated at the time of the accident, or that Redd's alleged intoxication caused the accident. *See Ebanks v. United States*, No. CIV.A 12-743, 2013 WL 2243839, at *6 (E.D. La. May 21, 2013) (stating that "[c]ourts distinguish between a seaman whose intoxication actually caused an injury and one who happens to be intoxicated at the time of an injury[.]"); *see also Frederick v. Swift Transp. Co.*, 616 F.3d 1074, 1079–80 (10th Cir. 2010) (noting that defendant had not argued that there was evidence that negligent driver "was so severely impaired by methamphetamine that a jury could find she had not returned to her employment even after she had resumed driving[.]"). Terral's allegations are insufficient. An opposing party "may not rely merely on allegations or denials in its own pleadings, but must, in its response, set out specific facts showing a genuine factual dispute for trial." *Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014).

While Redd drove with a suspended license, violated a direct order to stop driving, and was speeding throughout the trip, all against company policies, courts have recognized that not every violation of company policies "automatically casts an employee outside the course of his employment." *Beech*, 691 F.3d at 576 (citing *Frederick v. Swift Transp. Co*., 616 F.3d 1074, 1079–80 (10th Cir. 2010) (holding that a truck driver who drove while under the influence of methamphetamine, in violation of safety policies, still acted within the course and scope of her employment because she was driving on her assigned route under the employer's directions and attempting to meet her employer's deadlines)). This is so because "a seaman's conduct injuring a third party may involve both negligence and the violation of his employer's own policies; to remove a seaman from the course and scope of his employment merely for violating an employer's safety policies would immunize the employer from liability in such cases." *Matter of Chester J. Marine, LLC*, No. CV-20-214-JWD-SDJ, 2022 WL 16858505, at *10 (M.D. La. Nov. 10, 2022).

In short, on the record before it, there is no evidence from which to conclude that Redd or Vandenboom had abandoned their duties and were not acting within the course of scope of their employment.[3] As such, Vandenboom's motion for partial summary judgment on the issue of vicarious liability is **GRANTED**, and Terral's cross motion on the same issue is **DENIED**.

*ii. Maintenance and Cure*

On December 19, 2025, Terral filed an amended answer, asserting an affirmative defense that it should be relieved of its obligation to pay Vandenboom maintenance and cure. Rec. Doc. 21 at 8. Vandenboom therefore moves for partial summary judgment on the issue of maintenance

[3] The Court also concludes that Vandenboom acted within the course and scope of his employment. Undeniably, Vandenboom violated a direct order to continue the drive in Redd's place. However, Vandenboom drove for as long as he could and relinquished driving duties only when he became too tired to continue driving safely. Vandenboom's actions were in furtherance of Terral's business interests in that Vandenboom was trying to safely complete crew change. Terral has not introduced any evidence to show that Vandenboom's alleged drunkenness caused the accident or that any other action by Vandenboom caused the accident.

and cure. Rec. Doc. 22. Notably, Terral does not respond to the substance of Vandenboom's motion, instead arguing that there is no justiciable controversy and that the matter is not ripe. Rec. Doc. 31 at 4. But this matter does present a justiciable controversy. The dispute at issue here concerns whether Terral's "legal obligation to provide [Vandenboom] with maintenance and cure has been extinguished because [Vandenboom forfeited his right to maintenance and cure due to willful misconduct]." *Rowan Companies, Inc., v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989). Because of Terral's insistence that Vandenboom "has forfeited his right to continue to be paid [m]aintenance and [c]ure," Rec. Doc. 31 at 8, the dispute here is not "hypothetical, conjectural, or conditional." *Id*. Moreover, "all of the acts necessary for resolution of the merits of the claim," *i.e*., the accident, Vandenboom's injuries, etc., occurred before the filing of Vandenboom's complaint. *Id*. For the foregoing reasons, the dispute is also ripe for adjudication. The matter presented here is not an "abstract disagreement," *Thomas v. Union Carbide Agr. Prods. Co*. 473 U.S. 568, 580 (1985), but a real and present one given Terral's insistence that Vandenboom has forfeited his right to maintenance and cure. Having determined that a justiciable controversy ripe for adjudication has been presented, the Court now turns to the merits of Vandenboom's motion.

"From its dawn, the maritime law has recognized the seaman's right to maintenance and cure for injuries suffered in the course of his service to the vessel, whether occurring on sea or on land." *O'Donnell v. Great Lakes Dredge & Dock Co*., 318 U.S. 36, 63 (1943). The phrase "service of the ship" in maintenance and cure cases, has the same meaning as the "course of employment" phrase used in vicarious liability cases. *Ebanks v. United States*, No. CIV.A. 12-743, 2013 WL 2243839, at *4 (E.D. La. May 21, 2013). The "ship owner's duty to pay maintenance and cure is broad" and the duty "must be liberally interpreted for the benefit and protection of the seaman." *Vaughn v. Am. Com. Barge Line, LLC*, 672 F. Supp. 3d 184, 189 (E.D. La. 2023). Any "ambiguity

or doubt related to maintenance and cure must be resolved in favor of the seaman." *Id*. Because of the "absolute nature of the right, a plaintiff's burden of proof on a maintenance and cure claim is slight: he need only established that he was injured or became ill while 'subject to the call of duty as a seaman.'" *Johnson v. Cenac Towing, Inc.*, 599 F. Supp. 2d 721, 726 (E.D. La. 2009).

A shipowner's defenses to a seaman's maintenance and cure claim "are few and narrowly applied." *Silmon v. Can Do II, Inc.*, 89 F.3d 240, 242 (5th Cir. 1996). One such defense is when the seaman's injury is caused by willful misconduct or misbehavior. *Dailey v. Alcoa S.S. Co.*, 337 F.2d 611, 612 (5th Cir. 1964). However, as the Supreme Court has emphasized "time and again, however, the seaman's behavior must be 'positively vicious' before he will be denied maintenance and cure." *Johnson*, 599 F. Supp 2d at 726. The "traditional instances are venereal disease and injuries received as a result of intoxication." *Dailey*, 337 F.2d at 612. Even a seaman's "disobedience to orders" will not always constitute willful misconduct or misbehavior that would forfeit the seaman's right to maintenance and cure. *Farrell v. United States*, 336 U.S. 511, 517 (1949) (holding that seaman was still entitled to maintenance and cure even though seaman was "disobedient to orders" and was injured "due to no negligence but his own.").

With these principles in mind, the Court turns to the instant motion. First, Vandenboom was in the service of the ship at the time of the accident. As noted, the phrase "service of the ship" in maintenance and cure cases has the same meaning as the "course of employment" phrase used in vicarious liability cases. *Ebanks*, 2013 WL 2243839. The Court has determined, and Terral has admitted, that Vandenboom and Redd were acting within the course and scope of their employment. At the time of the accident, Vandenboom and Redd were completing crew change, which was a required part of their duties as crewmembers of the *MV MARY E. GATTLE*. Second, Vandenboom's actions did not rise to the level of willful misconduct such that he forfeited his

right to maintenance and cure. Vandenboom's actions consisted of allowing Redd to drive once he became too tired to continue driving himself, in violation of Ainsworth's direct order, and being asleep at the time of the accident. This does not amount to "positively vicious" behavior that would justify denying Vandenboom maintenance and cure. Finally, there is no evidence that Vandenboom's actions caused his injuries. *Dailey*, 337 F.2d at 612 (noting that the willful misconduct must cause the injury). Vandenboom's decision to let Redd drive did not cause his injuries. Even if the Court were to consider Vandenboom's alleged intoxication at the time of the accident, there is no evidence that his intoxication caused his injuries.[4] *See Creel v. Weber Marine, Inc.*, No. CIV.A. 92-0642, 1992 WL 314982, at *1 (E.D. La. Oct. 20, 1992) (stating that defendant had not submitted "one shred of evidence" showing that plaintiff's alleged willful misconduct, being under the influence of marijuana at the time of his injuries in violation of company policy, caused the injuries). For these reasons, Vandenboom is entitled to maintenance and cure. As such, Vandeboom's motion for partial summary judgment on the issue of maintenance and cure is **GRANTED**.

New Orleans, Louisiana, this 18th day of August 2026

SENIOR UNITED STATES DISTRICT JUDGE

[4] In its opposition memorandum, Terral noted that it would conduct additional discovery to determine "the extent to which Timothy Vandenboom participated in consuming an alcoholic beverage (or beverages) and the nature of the alcoholic beverages Timothy Vandenboom consumed[.]" Rec. Doc. 31 at 3. Terral continued that it would continue to pay for Vandenboom's maintenance and cure until Vandenboom reaches MMI or, alternatively, until Terral decides whether it will seek a ruling from this Court that Vandenboom has forfeited his right to maintenance and cure. *Id.* at 4. To date, however, Terral has not presented this Court with evidence establishing that Vandenboom's alleged alcohol consumption caused his injuries nor, nearly five months after filing its opposition, has Terral filed a cross motion on the issue of maintenance and cure arguing that Vandenboom forfeited his right to such recovery.